UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KAREEM S. PERRY,

                                        Plaintiff,           9:08-CV-602
      v.                                                  (LEK) (ATB)

BRIAN S. FISCHER, et al.,

                                    Defendants.

---

KAREEM S. PERRY, Plaintiff Pro Se
CHARLES J. QUACKENBUSH, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Lawrence E. Kahn, Senior United States District Judge.  The case was re-assigned to me on January 4, 2010, upon the retirement of Magistrate Judge Gustave J. Di Bianco.  (Dkt. No. 84).

    This action is one of a series of cases filed in district courts throughout New York alleging similar and overlapping civil rights violations.  In each such case, plaintiff has claimed that corrections officials in various state prisons in which he has been confined failed to protect him from harassment and assault by other inmates after they learned that plaintiff was a purported informant for law enforcement.

    Presently before this court is defendants' motion to dismiss plaintiff's amended

complaint and/or for other sanctions under FED. R. CIV. P. 11(c).  (Dkt. No. 56).[1]

Plaintiff has responded in opposition to the motion.  (Dkt. No. 78).

This court recommends that the amended complaint (Dkt. No. 24)[2] be dismissed under 28 U.S.C. § 1915(e) and Rule 11.  This court further recommends that plaintiff's motion for summary judgement (Dkt. No. 50), which has been held in abeyance pending decision on the motion to dismiss, and several other procedural and discovery motions filed by plaintiff (Dkt. Nos. 67, 72, 74-76, 82) be denied as moot.

**I.      Facts and Procedural History**

The amended complaint alleges that plaintiff worked as an informant for the "Department of Investigations" ("DOI").  When other inmates learned of his status, plaintiff claimed that he was subject to a series of assaults.  (Amended Complaint ("AC") ¶ 1).  It is clear from complaints filed by plaintiff in other similar actions that he claims to have worked for the New York City Department of Investigations (which plaintiff sometimes refers to as the "Inspector General Office") beginning in early 2005, and that the assaults he refers to in the instant amended complaint started later

---

[1] The defense motion includes an in camera submission.  (Dkt. No. 77).

[2] Defendant withdrew his claims against the Commissioner of the New York State Department of Correctional Services (DOCS) (Dkt. No. 37 at 5, n.1); accordingly, Defendant Brian S. Fischer was been dismissed from the action.  (Dkt. No. 40 at 6, 9).  The remaining defendants are DOCS Deputy Commissioner Lucien LeCLaire; the Superintendent of the Upstate Correctional Facility ("Upstate"), Robert K. Woods; and William Chase, a Correctional Sergeant at Upstate.

in 2005, when he was confined at Rikers' Island.[3]

The amended complaint alleges further that, while at Elmira Correctional Facility in 2006, plaintiff "persistently" asked to be placed in protective custody, but was refused.  Plaintiff claims that he was assaulted by inmates at Elmira later that same year.  (AC ¶¶ 2-3).  The complaint in the *Caruso* case, in the Eastern District of New York (*Caruso* Complaint at 12, ¶¶ 19-21), as well as in an action plaintiff commenced in the Western District of New York, included allegations regarding events relating to his confinement at Elmira in 2006.  *See Perry v. Goord*, 06 CV 828, 2009 WL 2580324 at *2, 2009 U.S. Dist. LEXIS 53884 (W.D.N.Y. Aug. 18, 2009).

Plaintiff was transferred to Upstate (in the Northern District of New York) on October 18, 2006.  He alleges that he made a series of requests to the defendants to be separated from inmates against whom he previously provided information to law enforcement, and asked to be placed in single-cell protective custody.  The defendants failed to change defendant's housing status as requested, and he was again the victim of alleged assaults by inmates at Upstate in November and/or December 2006[4] and on

---

[3] Complaint in *Perry v. Fischer, et al.*, 9:07-CV-1245 (N.D.N.Y.), Dkt. No. 1 at 7; Complaint in *Perry v. Caruso*, 1:07-CV-1115 (E.D.N.Y.) (hereinafter the "*Caruso*" action), Dkt. No. 13-2 at 9-11.

[4] The amended complaint alleges that, on November 17, 2006, plaintiff had a fight with an inmate at Upstate who had learned that plaintiff was an informant.  (AC ¶ 5). Plaintiff later mentions "the fight in December 2006," and references corroborating disciplinary and medical records suggesting the fight occurred on December 17, 2006.  (AC ¶¶ 11-12).   It is unclear whether plaintiff

May 30, 2008.  (AC ¶¶ 4-21).

This court will take judicial notice of plaintiff's similar litigation in this and other federal districts in this state.  FED. R. EVID. 201.  Magistrate Judge Hugh Scott in the Western District of New York surveyed plaintiff's prior cases and reported that he filed 29 civil rights actions over the past twelve years, "most" arising from the same fact pattern that prison officials failed to protect him from assaults by other inmates aware of plaintiff's informant status.  *Perry v. Goord*, 2009 WL 2580324 at *3.  Of the 16 civil rights actions that had been disposed of prior to August 2009, eight had been voluntarily withdrawn by plaintiff, four had been dismissed by order, and four had been settled.  *Id.*

Two of the similar cases that plaintiff settled, in June 2007, (for a total of approximately $6,000) were actions in the Eastern District of New York–*Perry v. Caruso* (cited above) and *Perry v. Boyd*.[5]  On November 5, 2007, plaintiff directed two separate letters to officials of the New York City "Office of Inspector General" ("OIG") stating that he had just learned that OIG had sent favorable correspondence to DOCS on plaintiff's behalf.  In one letter, plaintiff apologized for filing "a number of manufactured lawsuits and complaints against **Mike**, **Tim**, Maggie and **Michelle**."

---

is making inconsistent allegations about the date of a single fight or whether he is claiming to have participated in two fights in 2006, one in November and one in December.

[5] *Perry v. Boyd*, Dkt. No. 06-CV-3958 (E.D.N.Y.) (hereinafter the "*Boyd*" action).

4

(Quackenbush Dec., Ex. 3, Dkt. No. 56-2 at 36) (emphasis added).  The named defendants in the *Caruso* action were **Michael** Caruso, **Timothy** "Doe" and **Michelle** Flores, identified as officials of the "Inspector General Office."  (*Caruso* Complaint at 1-2).  In the other letter, plaintiff apologized to Tim, Mike, Michelle, and Maggie for filing a "vindictive, manufactured complaint." (Ex. 3, Dkt. No. 56-2 at 34).  Plaintiff continued: "No one ever thought I was an informant + definitely no inmate would dare put their hands on me (picture that).)  *Id.*

On January 14, 2008, the New York State Attorney General's Office wrote the Hon. Brian Cogan, the District Judge assigned to the *Boyd* and *Caruso* cases, forwarding copies of plaintiff's letters to OIG admitting that the allegations in those actions were "manufactured."  (Ex. 3, Dkt. No. 56-2 at 30-32).  The following day, Judge Cogan issued an order to show cause why Rule 11 sanctions should not be imposed on the plaintiff, given his admission that the material facts in the complaints in both actions were false.  (*Caruso* Dkt. No. 26).  Eventually, on February 22, 2008, plaintiff resolved these issues by agreeing, among other things, to return $8,500 he received in connection with the settlements of the lawsuits in *Caruso, Boyd*, and one other case in the Eastern District of New York.  Plaintiff requested that the following statement be included in any documents submitted to the court: "I, Kareem Perry, committed fraud upon the Court and that I was never subject to inmate or staff abuse,

5

and I did not work for the Department of Investigation." (*Caruso* Dkt. No. 32).

On November 28, 2007, plaintiff had filed a prior complaint in this district against the Commissioner of DOCS and the Superintendent of Upstate alleging that they failed to protect him from assaults by other inmates at Upstate and elsewhere who learned of plaintiff's alleged status as an informant. The Northern District of New York complaint expressly referenced the *Caruso* and *Boyd* actions in allegations relating to plaintiff's cooperation with DOI and prior retaliatory assaults. (*Perry v. Fischer, et al.,* 9:07-CV-1245 (GLS/DRH), Dkt. No. 1 at 7). On February 27, 2008, just after agreeing to repay the funds received in settlement for the similar actions in the Eastern District of New York because of his "fraud on the court," plaintiff requested that the action in this district be withdrawn. (9:07-CV-1245, Dkt. No. 10).

On June 9, 2008, plaintiff filed the initial complaint in the instant action, essentially re-stating the allegations regarding events at Upstate from case no. 9:07-CV-1245, but without the explicit references to the *Caruso* and *Boyd* cases in the text. The list of prior lawsuits in the form complaint did reference eleven prior actions from all four New York districts, including the *Caruso* and *Boyd* cases, but did not mention No. 9:07-CV-1245. (Dkt. No. 1). Plaintiff's *in forma pauperis* ("IFP") application checked "no" for the question whether plaintiff had received money in the past twelve months from any source, despite receiving funds in settlement of the lawsuits in the

Eastern District of New York. (Dkt. No. 2)[6]  Plaintiff amended his complaint on September 30, 2008. (Dkt. No. 24).

On December 3, 2008, plaintiff forwarded a letter to the Hon. Lois Bloom, the assigned Magistrate Judge in both the *Boyd* and *Caruso* cases, informing the court that he had committed perjury in the *Boyd* matter. Plaintiff wrote: "All of the paragraph allegations in that action is false (sic). The Complaint was filed out of greed and I hereby accept responsibility for my fraudulent actions." (Ex. 3, Dkt. No. 56-2 at 39).

Pursuant to Fed. R. Civ. P. 11, defense counsel in this action notified plaintiff, on May 26, 2009, that they intended to inform the court about plaintiff's conduct in the *Caruso* and *Boyd,* and gave him 21 days to discontinue the action before filing a motion for sanctions. (Ex. 7, Dkt. No. 56-2 at 55-56). Plaintiff chose to continue to pursue this lawsuit.

In his Affidavit in opposition to the motion for sanctions, plaintiff insists that his lawsuits in *Caruso* and *Boyd* were not false or fraudulent, despite contrary admissions in various writings. (Pl. Aff., Dkt. No. 78, ¶ 4). He claims that he requested the settlement stipulation admitting fraud on the court to generate documents he could show to other inmates to convince them that he was not an

---

[6] Plaintiff received the funds in those cases some time after August 14, 2007, less than twelve months before he filed his complaint and IFP application. (*Caruso* Dkt. Nos. 23, 24).

informant. (Pl. Aff. ¶¶ 5, 7). Plaintiff alleges that his letter of December 3, 2008 to Judge Bloom was designed to "get [him] indicted for perjury," again presumably to deflect suspicious that he was cooperating with law enforcement. (Pl. Aff. ¶ 9). He characterizes his admissions of fraud on the court in the *Caruso* and *Boyd* actions as "desperate," "sad and bizarre" measures designed to try to ensure his safety in prison.

## II.   Rule 11 Sanctions

Under FED. R. CIV. P. 11(b), whenever a signed pleading or "other paper" is submitted to the court, the attorney or *pro se* litigant certifies, *inter alia*, that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay . . . [and]
> (3) the allegations and other factual contentions have evidentiary support . . . .

In order to justify Rule 11 sanctions, it must appear that the lawyer or *pro se* litigant "sign[ed] a pleading, motion, or other paper for an improper purpose . . . or [did] so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law . . . ." *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir. 1994).

To comply with Rule 11's procedural requirements, a party must make its motion for sanctions separate from other motions or requests, describe the specific conduct alleged to violate Rule 11(b), provide notice to opposing counsel, and serve the motion at least twenty-one days prior to filing the motion with the court. FED. R.

CIV. P. 11(c)(1)(A). *See Langdon v. County of Columbia*, 321 F. Supp. 2d 481, 484 (N.D.N.Y. 2004); *Kron v. Moravia Central School Dist.*, No. 5:98-CV-1876, 2001 WL 536274 at *3, 2001 U.S. Dist. LEXIS 6573 (N.D.N.Y. May 3, 2001). The twenty-one day period between notice and filing is referred to as a "safe harbor" because the opposing party may avoid sanctions by withdrawing or correcting the offending material during this period. In this case, defendants have complied with the procedural requirements of Rule 11.

The imposition of sanctions is a discretionary decision. *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000). That discretion should be exercised with caution, and sanctions imposed only when it is patently clear that one has engaged in improper conduct. *Cerrone v. Cahill,* 95-CV-241, 2001 WL 1217186, at *16, 2001 U.S. Dist. LEXIS 15380 (N.D.N.Y. Sept. 28, 2001). Whether conduct is sanctionable is subject to a test of objective unreasonableness. *Margo,* 213 F.3d at 65. *See also, Binghamton Masonic Temple, Inc. v. Bares,* 168 F.R.D. 121, 126-127 (N.D.N.Y. 1996).

A sanction imposed under Rule 11 must "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(b)(4). The Court must be mindful that the main thrust of Rule 11 sanctions is deterrence. *Margo*, 213 F.3d at 64-65; *Ehrich v. Binghamton City School District*, 210 F.R.D. 17 (N.D.N.Y. 2002). A court has the discretion to dismiss an action with

prejudice as a sanction pursuant to Rule 11, although this harsh sanction should be imposed only in extreme circumstances where the court is sure that lesser sanctions will be ineffective.  *See, e.g.*, *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417-418 (S.D.N.Y. 2003) (collecting cases).[7]

### III.   Dismissal Under 28 U.S.C. § 1915

The court has a responsibility to determine that a complaint may be properly maintained before it may permit a plaintiff to proceed with an action in *forma pauperis*.  Under 28 U.S.C. § 1915(e), the Court:

> (2)   [S]hall dismiss the case at any time if the court determines that -
> ***
> (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B).  In *Gabrelian v. Acampora*, the court interpreted the term "malicious" in Section 1915 by reference to the definition contained in Black's Law Dictionary.  It court found that a "malicious" action would include a case that was initiated with "wicked or mischievous intentions or motives," or "without just cause or

---

[7] In opposing the imposition of sanctions, plaintiff cites *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998).  In *Savino*, a significant allegation in plaintiff's complaint was later contradicted by plaintiff's deposition testimony.  The Second Circuit held that the imposition of sanctions was not appropriate, given that plaintiff ultimately prevailed on the merits, and that plaintiff's counsel provided an affidavit in opposition to the motion for sanctions which documented reasonable inquiry into the allegations in the complaint.  *Id.*  As discussed elsewhere herein, the direct contradictions between the *pro se* plaintiff's various statements regarding some of the allegations in the amended complaint are stark and not plausibly explained.

10

excuse." *Gabrelian v. Acampora*, CV-90-3234, 1991 WL 626724 at *2, 1991 U.S. Dist. LEXIS 18262 (E.D.N.Y. Dec. 11, 1991).

Dismissal of duplicative or repetitious litigation of identical causes of action may be appropriate under Section 1915(e). See, e.g., *Azubuko v. Giorlandino*, 213 F.3d 625 (table), 2000 WL 553184 at *1 (2d Cir. 2000) (upholding dismissal, under § 1915(e) of federal complaint that raised essentially the same claims as were asserted in multiple prior actions); *Williams v. Bunn*, 06-CV-0466, 2007 WL 1703816 at *1, 2007 U.S. Dist. LEXIS 41829 (W.D.N.Y. June 7, 2007) (complaint appearing to allege a religious claim against two prison officers would be dismissed as repetitive of claim previously filed and dismissed twice for failure to serve the defendants); *DePonceau v. Bush*, No. 04CV6240, 2004 WL 1574621 at *2, 2004 U.S. Dist. LEXIS 13819 (W.D.N.Y. June 4, 2004) (collecting cases).

## IV. Application of Legal Standards

The unusual circumstances of this case are virtually identical to those faced by Magistrate Judge Scott in a similar case filed in the Western District of New York by Plaintiff Perry. For essentially the same reasons articulated by Judge Scott, this court will recommend that the amended complaint in this case be dismissed under Rule 11 and 28 U.S.C. § 1915(e)(2)(B)(I). *Perry v. Goord*, 06CV828, 2009 WL 2580324, 2009 U.S. Dist. LEXIS 53884, (W.D.N.Y. Aug. 18, 2009). Given the egregious nature

of plaintiff's misconduct and his abusive pattern of filing repetitive and overlapping lawsuits, this court concludes that dismissal is the only sanction that is adequate to deter plaintiff or similarly situated *pro se* litigants from further improper conduct of this sort.

As Judge Scott points out, plaintiff's repeated filings in various district courts in New York demonstrate a pattern, which is both improper and malicious. A multitude of these complaints follow the same template for claims arising in the various prisons in which plaintiff was confined: (1) plaintiff alleges that inmates learn that he was an informant and begin to harass or assault him; (2) plaintiff requests protective custody, but is denied; (3) plaintiff then files grievances and lawsuits, complaining of the alleged failure of the prison officials to protect him, thereby further disclosing the facts that make him vulnerable to retaliation by other inmates; (4) plaintiff, often belatedly, attempts to mitigate the effect that his complaints and lawsuits have on his perceived security, by dismissing the actions or belatedly seeking to seal them. The filing of lawsuits in different jurisdictions and the selective dismissal and efforts to seal the actions also serves to conceal from the judges handling the cases the troubling pattern of plaintiff's prior litigation. See *Perry v. Goord*, 2009 WL 2580324 at *9. And, as suggested in plaintiff's December 3, 2008 letter to Judge Bloom in connection with the *Boyd* case, his "greed," triggered by the settlements he won in several of the

earlier cases, seems to motivate him to continue the cycle of abuse of the judicial system.[8]

Many of the allegations in the amended complaint in this action mirror those raised in the actions in the Eastern District of New York, which plaintiff stated were false and fraudulent in letters to the Inspector General and Judge Bloom, and in statements to the Attorney General. This amended complaint, like the *Caruso* complaint (and the complaint in the action in the Western District of New York), contains allegations of plaintiff's cooperation with DOI in 2005; ignored requests for protective housing to prison officials and the retaliatory assaults at Rikers in 2005; and the similarly futile requests to prison authorities and the further retaliatory assaults at Elmira in 2006. Plaintiff has, in turn, represented that these allegation were true (in the *Caruso* and *Boyd* complaints), admitted they were false (in the letters and statements of recantation), and then again asserted their veracity (in the instant amended complaint and the complaint in the Western District of New York).

Plaintiff alleges that he falsely recanted the allegations he made in the *Caruso*

---

[8] Defense counsel's *in camera* submission, vaguely referenced in its public filings, indicate that the plaintiff, in complicity with others, staged one or more of the incidents at Upstate alleged in the amended complaint. While the *in camera* submission certainly supports the defendants' motion, this information is not necessary to reach the conclusions of this court and was not relied upon in this decision. Accordingly, and given the security concerns of the Attorney General's Office regarding disclosure of the statements and testimony reflected in the *in camera* exhibits, this court would not grant Plaintiff's motion to compel disclosure of these exhibits. (Dkt. No. 67).

13

and *Boyd* complaints in a desperate effort to protect himself from further retaliatory assaults by creating documentation indicating that he was not cooperating with law enforcement authorities. This admittedly "bizarre" explanation of his conduct might square with the plaintiff's settlement statement in February 2008 that he committed a fraud on the court and did not work for "DOI." (*Caruso* Dkt. No. 32). And the December 2008 letter to Judge Bloom, which seems to invite a perjury prosecution, may be consistent with the plaintiff's current posture.

Plaintiff's November 5, 2007 letters to the Inspector General (Quackenbush Dec., Ex. 3, Dkt. No. 56-2 at 33-37), in which he admits vindictively manufacturing the allegations in the *Caruso* complaint, betray the holes in plaintiff's *post hoc* "spin" on his recantations. Plaintiff admits in his affidavit that he expected those "letters would be kept in confidence." (Pl. Aff., Dkt. No. 78, ¶ 6). Plaintiff's explanation that he lied about manufacturing the lawsuit in those letters in the hopes that the *Caruso* defendants would restore him as an informant in prisons in the New York City area (Pl. Aff. ¶ 6) is utterly inconsistent with plaintiff's repeated claims that he wanted to distance himself from his past as an informant for his own protection in prison. It was only after his admissions to the Inspector General were provided to the defendants' attorney and the Judge in the *Caruso* and *Boyd* cases in January 2008, that plaintiff begin erratically shifting his position with respect to the veracity of the claims he

14

asserted in those cases.

As Judge Scott observed, the plaintiff may have faced a "quandary" in that efforts to vindicate his perceived rights to protective housing through litigation further publicized his former role as an informant and made him more vulnerable to future harassment or retaliation by other inmates. *Perry v. Goord*, 2009 WL 2580324 at *10. However, this court concurs with Judge Scott's analysis, which compels the dismissal of the plaintiff's amended complaint in this action:

> [T]his quandary does not justify plaintiff's inconsistent (at best) or perjurious (at worst) actions in the conduct of his litigation. . . . Plaintiff has asserted claims arising from defendants' failure to protect him in Elmira in 2006 in this case and in *Caruso*, but later recanted that allegation in *Caruso* alleging that the claim was a fraud on the Court. Plaintiff (regardless of his motives) cannot play one district against another and assert as valid allegations from the same fact pattern in one Court that he calls a fraud in another. This is also an instance of duplicative or repetitious litigation that should be dismissed by the Court *sua sponte*, *see DePonceau*, *supra*, 2004 U.S. Dist. LEXIS 13819, at *5, 2004 WL 1574621 [at *2]. By not withdrawing the case at bar once plaintiff [admitted] . . . "fraud on the court" . . . in *Caruso* . . . , the continued prosecution of the Complaint here was for an improper purpose, to harass defendants and put into question the factual basis for the allegations contained in that pleading, *cf.* Fed.R.Civ.P. 11(b)(1), (3).

*Id.*

## V.     **Further Sanctions**

To the extent the plaintiff has not paid the entire $350 filing fee in this action, this court recommends that his *in forma pauperis* status be revoked and that he be

15

ordered to pay the balance of his fee immediately. As noted above, in addition to the primary reasons for imposing sanctions on the plaintiff, he also failed to disclose the settlement payments that he received from the State of New York in the twelve months before filing his IFP application in this case.

The court is not inclined to recommend further sanctions. Because defendants were represented by the New York State Attorney General, having plaintiff pay the costs and fees for the defendants' attorneys would be speculative. Such a sanction would mire the court in prolonged and likely pointless ancillary litigation. As a prisoner, plaintiff is unlikely to be in a position to satisfy any additional monetary sanctions, given that plaintiff has apparently re-paid or is, at least, liable for the settlement funds that he received earlier and that sanctions equaling the fees of his court-appointed attorney were already imposed in the case in the Western District of New York. *Perry v. Goord*, 2009 WL 2580324 at \*12. We also agree with Judge Scott that initial *in forma pauperis* screening of any future cases filed by plaintiff in this district is a satisfactory bar to any frivolous or malicious suits.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for sanctions and to dismiss the amended complaint (Dkt. No. 56) be **GRANTED** and that the amended complaint be **DISMISSED IN ITS ENTIRETY**, with prejudice; and it is

**RECOMMENDED**, that plaintiff's *in forma pauperis* status be revoked and that he be ordered to pay any balance of his $350 filing fee immediately;

**RECOMMENDED**, that plaintiff's motions for summary judgment (Dkt. No. 50) be **DENIED** as moot; and it is

**RECOMMENDED**, that plaintiff's various discovery and procedural motions (Dkt. Nos. 67, 72, 74-76, 82) be **DENIED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 2, 2010

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge